In re PIONEER INVESTMENT SERVICES COMPANY a/k/a Premiere Restaurant Investment, Debtor.

PIONEER INVESTMENT SERVICES COMPANY, Plaintiff,

v.

THE CAIN PARTNERSHIP, LTD., The General Partner of Cain, Inc., Larry E. Parrish, Geneva Cain Anderson, Helen Cain Harkins, and Jeannie B. Cain Corum Miller, Defendants,

First Tennessee Bank National Association, Intervenor.

Bankruptcy No. 3–89–01058.
Adv. No. 91–3286.

United States Bankruptcy Court,
E.D. Tennessee.

June 1, 1992.

Riker, Danzig, Scherer, Hyland & Perretti, Craig J. Donaldson, Morristown, N.J.

Kennerly, Montgomery & Finley, William S. Lockett, Jr., Knoxville, Tenn., for plaintiff, debtor.

Sherrard & Roe, William J. Harbison, Nashville, Tenn., for defendants The Cain Partnership, Ltd., The General Partner of Cain, Inc., Larry E. Parrish, Geneva Cain Anderson and Helen Cain Harkins.

McCampbell & Young, P.C., J. Christopher Kirk, Knoxville, Tenn., for defendant Jeannie B. Cain Corum Miller.

Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Richard B. Gossett, Chattanooga, Tenn., Nelwyn I. Rhodes, Knoxville, Tenn., for intervening plaintiff First Tenn. Bank Nat. Ass'n.

Bass, Berry & Sims, E. Bruce Foster, Jr., Knoxville, Tenn., for First Tenn. Bank Nat. Ass'n, trustee for Lillie Mae Cain Testamentary Trust.

## MEMORANDUM ON DEFENDANTS' MOTIONS TO DISMISS, FOR JUDGMENTS ON THE PLEADINGS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENTS, AND ON PLAINTIFF'S MOTION TO AMEND COMPLAINT

Richard S. Stair, Jr., Bankruptcy Judge.

The reorganized debtor, Pioneer Investment Services Company (Pioneer), commenced this adversary proceeding by the filing of a Complaint on November 20, 1991. By agreement, First Tennessee Bank National Association (First Tennessee) was allowed to intervene. First Tennessee filed its Intervening Complaint on December 20, 1991. All defendants named in Pioneer's Complaint were also named in the Intervening Complaint.[1]

Pioneer and First Tennessee, asserting substantially identical claims, seek the following relief: (1) that the defendants be required to show cause why they should not be held in civil contempt for the commencement of an action by the defendant, The Cain Partnership, Ltd. (The Cain Partnership), against Pioneer in the Circuit Court for Knox County, Tennessee, on November 12, 1991, grounded upon claims which Pioneer contends were resolved by this court during the pendency of its bankruptcy case and are thus *res judicata;* (2) that the defendants be required to purge themselves of civil contempt by dismissing The Cain Partnership's state court action and that they further be required to pay all costs and expenses attributable to Pioneer's defense of that action, including attorneys' fees, together with damages; (3) that the court enter a temporary restraining order and, thereafter, a permanent injunction prohibiting the defendants from bringing any further action to terminate

---

1. Upon motion of First Tennessee filed May 11, 1992, pursuant to Fed.R.Civ.P. 41(a)(2), incorporated into Fed.R.Bankr.P. 7041, an order was entered on May 14, 1992, dismissing the Intervening Complaint as to the defendants Geneva Cain Anderson, Helen Cain Harkins, and Jeannie B. Cain Corum Miller.

the lease which is the subject of the state court action and/or to remove Pioneer from possession of the leasehold estate it holds under the terms of a lease with The Cain Partnership; [2] and (4) that they have general relief.

The court has before it the following motions: (1) a motion filed by the defendant, Jeannie B. Cain Corum Miller, on December 20, 1991, requesting dismissal of Pioneer's Complaint or, alternatively, summary judgment; [3] (2) a joint motion filed January 10, 1992, by the defendants, Geneva Cain Anderson and Helen Cain Harkins, requesting a judgment on the pleadings or, alternatively, summary judgment, as to Pioneer's Complaint; (3) a joint motion filed January 10, 1992, by the defendants, The Cain Partnership, The General Partner of Cain, Inc., and Larry E. Parrish, requesting a judgment on the pleadings or, alternatively, summary judgment as to both the Complaint and Intervening Complaint; (4) a "Motion To Amend Complaint" filed by Pioneer on March 17, 1992, requesting that it be permitted to amend its complaint to, *inter alia*, add First Tennessee Bank National Association, Trustee for the Lillie Mae Cain Testamentary Trust, as a party defendant; and (5) a motion filed April 8, 1992, by the defendants, The Cain Partnership, The General Partner of Cain, Inc., Larry E. Parrish, Geneva Cain Anderson, and Helen Cain Harkins (hereafter, collectively, the Cain Defendants), requesting the court to dismiss the Complaint and Intervening Complaint and to deny Pioneer's "Motion To Amend Complaint," due to a lack of subject matter jurisdiction.[4]

## I

### BACKGROUND

Pioneer and The Cain Partnership were involved in considerable litigation during the pendency of Pioneer's Chapter 11 case. That litigation has continued both in the bankruptcy court and in state court subsequent to confirmation of Pioneer's plan of reorganization. The present adversary proceeding represents another chapter in this ongoing litigation.

Essential to a resolution of the motions pending before the court is a chronological recitation of undisputed current and historical facts. To the extent these facts cannot be gleaned from affidavits and pleadings of record in this adversary proceeding, the court will take judicial notice of all material facts of record in the debtor's case, including prior litigation. Fed.R.Evid. 201; *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n. 3 (3rd Cir.1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). The court will also take judicial notice of averments made by The Cain Partnership in its complaint filed against Pioneer on November 12, 1991, in the Knox County Circuit Court and in a complaint filed by The Cain Partnership and certain other defendants on March 7, 1992, in the Chancery Court for Shelby County, Tennessee. A copy of the Knox County Circuit Court complaint is appended to Pioneer's Complaint commencing this adversary proceeding, and a copy of the Shelby County Chancery Court complaint is appended to the proposed amended complaint tendered by Pioneer on March 17, 1992, in support of its "Motion To Amend Complaint."

### UNDISPUTED FACTS

1. Pioneer filed a voluntary petition under Chapter 11 of title 11 of the United States Code on April 12, 1989.

---

2. The court did not act on Pioneer's request for a temporary restraining order due to Pioneer's failure to comply with the provisions of Fed. R.Civ.P. 65(b), incorporated into Fed.R.Bankr.P. 7065. An order was entered on December 23, 1991, summarily denying First Tennessee's request for a temporary restraining order for the same reason.

3. An affidavit filed December 20, 1991, in support of her motion establishes that "Jeannie" B. Cain Corum Miller is in fact "Jennie" B. Cain Corum Miller. For the sake of continuity, the court will perpetuate the misspelling of this defendant's first name throughout this Memorandum.

4. These same defendants in answers filed on December 19, 1991, and January 2, 1992, deny the jurisdiction of the bankruptcy court to entertain the Complaint and Intervening Complaint, respectively.

2. The defendants in this adversary proceeding are identified as follows: The Cain Partnership is a Tennessee limited partnership; The General Partner of Cain, Inc., is the corporate general partner of The Cain Partnership; Larry E. Parrish is the president of The General Partner of Cain, Inc., and is also an attorney for The Cain Partnership;[5] and Geneva Cain Anderson, Helen Cain Harkins, and Jeannie B. Cain Corum Miller are limited partners of The Cain Partnership.

3. At the time it filed its Chapter 11 petition, Pioneer held an interest in approximately 86.54 acres of land in Knox County, Tennessee, upon which it had constructed the Towne & Country and Commons Shopping Centers. Pioneer holds this property under the terms of a lease between The Cain Partnership, as lessor, and Colonial Enterprises, Inc., the original lessee, dated April 11, 1974, as amended by an "Amendment To Lease" dated April 1, 1977. Through multiple assignments, the debtor became the lessee by way of an "Assignment Of Lease" dated April 13, 1987. The lease has been referred to in prior litigation and will be referred to in this Memorandum as the Colonial Lease.

4. On May 18, 1989, Pioneer filed a "Motion For Approval Of Assumption Of Executory Contract" which was supplemented by an "Amended Motion For Approval Of Assumption Of Executory Contract" filed June 9, 1989 (collectively, the Motion To Assume). By the Motion To Assume, Pioneer sought the court's approval to assume the unexpired nonresidential Colonial Lease pursuant to 11 U.S.C.A. § 365(a) (West Supp.1992).

5. On May 25, 1989, The Cain Partnership filed a motion seeking to terminate the automatic stay to permit it to repossess and reenter the demised premises held by Pioneer under the Colonial Lease. By this motion, The Cain Partnership contended that the Colonial Lease was automatically terminated prior to the April 12, 1989 filing of Pioneer's Chapter 11 petition due to Pioneer's failure to pay real property taxes assessed against the leasehold property and because of certain illegal activity alleged to be occurring on a portion of the property.

6. On September 15, 1989, this court filed its "Memorandum On The Cain Partnership's Motion To Lift Automatic Stay And On Debtor's Motion For Approval Of Assumption Of Executory Contract." Consistent with the findings and conclusions of law enunciated in its Memorandum, the court entered an order on the same date denying The Cain Partnership's automatic stay motion and granting Pioneer's Motion To Assume. In substance, the court concluded, *inter alia*, that the Colonial Lease, which lacks a termination or default clause, was not terminated under Tennessee law prior to the filing of Pioneer's Chapter 11 petition by Pioneer's breach of a covenant in the lease, to wit, its obligation to pay real property taxes assessed against the demised estate, because The Cain Partnership took no action to terminate the lease.

7. The September 15, 1989 order denying The Cain Partnership's automatic stay motion and granting Pioneer's Motion To Assume was affirmed on appeal by the United States District Court in an unreported opinion filed March 8, 1990.

8. On October 17, 1990, this court entered an order confirming Pioneer's Second Amended Plan Of Reorganization (Plan) filed March 27, 1990, as modified July 20, August 17, and October 11, 1990. Article VIII of the Plan, which dictates the means to be utilized by Pioneer in executing the Plan, requires that Pioneer use the cash flow from the Towne & Country and Commons Shopping Centers, in excess of amounts required to make payments to a secured creditor, Fleet National Bank, to pay operating expenses; that proceeds realized from any sale or refinancing of the Towne & Country and Commons Shopping Centers will be used to pay the secured indebtedness of Fleet National Bank and First Tennessee; and that Pioneer will con-

---

**5.** Although he initially entered an appearance on behalf of the Cain Defendants, Mr. Parrish does not represent these defendants in this adversary proceeding. Prior to confirmation of Pioneer's plan, he represented The Cain Partnership in all matters before this court.

tinue to develop the property leased from The Cain Partnership under the Colonial Lease.

9. The opinion of the district court affirming this court's September 15, 1989 order denying The Cain Partnership's automatic stay motion and granting Pioneer's Motion To Assume was affirmed by the United States Court of Appeals for the Sixth Circuit in an opinion filed September 18, 1991, as amended October 28, 1991. *The Cain Partnership, Ltd. v. Pioneer Inv. Serv. Co. (In re Pioneer Investment Serv. Co.)*, 946 F.2d 445 (6th Cir.1991), *petition for cert.* filed April 7, 1992, No. 91–1625.[6]

10. On October 31, 1991, Pioneer filed a motion seeking authorization to assign its leasehold interest in approximately 37.161 acres of the property demised under the Colonial Lease upon which it operates the Towne & Country and Commons Shopping Centers to an entity by the name of Triad Development Company, for the sum of $19,000,000. At a hearing held November 26, 1991, the court concluded that Pioneer had the right under its confirmed plan to execute the requested assignment and, over The Cain Partnership's objection, approved the same.[7]

11. On November 12, 1991, The Cain Partnership commenced an action in the Circuit Court for Knox County, Tennessee, styled *The Cain Partnership, Ltd. v. Pioneer Inv. Serv. Co.*, Docket No. 2–842–91. In its state court action, The Cain Partnership avers that Pioneer failed to pay, or has paid in a delinquent manner, 1989, 1990, and 1991 real property taxes assessed against the property demised to Pioneer

under the Colonial Lease; that Pioneer is a tenant at sufferance; that Pioneer unlawfully detains the demised property; that it is entitled to a writ of possession; that Pioneer should be required to account for all rents generated from the use of the demised property during the time it has held the property as a tenant at sufferance; and for a judgment for the rents, all taxes assessed and unpaid, costs, and attorneys' fees. In substance, The Cain Partnership contends in its Knox County Circuit Court action that the Colonial Lease was automatically terminated upon Pioneer's failure to pay the required real property taxes.

12. The Complaint filed by Pioneer on November 20, 1991, initiating this adversary proceeding and the Intervening Complaint filed by First Tennessee on December 20, 1991, are grounded upon the following common theories: (1) that The Cain Partnership's action in the Knox County Circuit Court, to the extent predicated on the debtor's failure to pay property taxes for the years 1989 and 1990, is groundless because, pursuant to Bankruptcy Code § 1141(d),[8] the October 17, 1990 order confirming Pioneer's Plan discharged Pioneer from any claims of The Cain Partnership arising prior to confirmation (Complaint at paragraph 19; Intervening Complaint at paragraph 21); (2) that the complaint in the Knox County Circuit Court, to the extent based on Pioneer's failure to pay real property taxes due in October, 1991, cannot be maintained by The Cain Partnership for the purpose of terminating the Colonial Lease and removing Pioneer from possession of the demised premises, because The Cain Partnership is barred from relitigating these issues under the doctrine of *res judi-*

---

**6.** The Cain Partnership's petition for certiorari to the Supreme Court is premised exclusively on jurisdictional grounds.

**7.** The court, in a memorandum opinion dictated orally from the bench at the conclusion of the November 26, 1991 hearing, which was transcribed and filed on December 18, 1991, *nunc pro tunc* to November 26, 1991, noted its reluctance to involve itself in this post-confirmation transfer of assets. The court accordingly concluded that the debtor's confirmed plan did not require the court's approval of the proposed sale and limited its ruling to a determination that the sale and the proposed sale price did not "do

violence" to the debtor's confirmed plan. *In re Pioneer Investment Services Co.*, Case No. 3–89–01058, slip op. at 5 (Bankr.E.D.Tenn. Nov. 26, 1991).

**8.** Code § 1141(d) provides in material part:

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation....

11 U.S.C.A. § 1141(d) (West 1979).

*cata* (Complaint at paragraph 20; Intervening Complaint at paragraph 22); and (3) that the actions of all defendants from the commencement of Pioneer's Chapter 11 case on April 12, 1989, through and including the filing of The Cain Partnership's complaint in the Knox County Circuit Court on November 12, 1991, have been designed to impede Pioneer's sale or assignment of its interest in the leasehold estate acquired under the Colonial Lease and to inhibit Pioneer's ability to develop the remaining portion of its leasehold estate thereby prohibiting it from consummating its Plan (Complaint at paragraph 21; Intervening Complaint at paragraph 23). Additionally, First Tennessee, in its Intervening Complaint, avers that it is a secured creditor under the Plan and that its security is the leasehold estate demised to Pioneer under the Colonial Lease (Intervening Complaint at paragraphs 10 and 11).

## II

### JURISDICTION AND ABSTENTION

The Cain Defendants have moved to dismiss Pioneer's Complaint and First Tennessee's Intervening Complaint for lack of subject matter jurisdiction. They further state in their dismissal motion and in a supporting memorandum that issues raised in the Complaint and Intervening Complaint are non-core; that they do not consent to the entry of a final order or judgment by the bankruptcy judge;[9] and that in the event the court concludes it does have subject matter jurisdiction it should abstain from hearing this adversary proceeding pursuant to 28 U.S.C.A. § 1334(c)(2) (West

Supp.1992). The court will address each of these issues.

### POST–CONFIRMATION RETENTION OF JURISDICTION

The thrust of the Cain Defendants' dismissal motion is that the Knox County Circuit Court action involves post-confirmation state law issues which are not cognizable in the bankruptcy court. The Cain Defendants argue that upon confirmation of Pioneer's Plan the bankruptcy court did not retain jurisdiction over post-confirmation litigation.

Preliminarily, the court notes the observations of one bankruptcy court that "[s]ince at least 1944, court's have recognized the competing interests between retaining jurisdiction over confirmation until entry of the final decree (Bankr.R. 3020), and ending the 'tutelage' status of reorganization, a period 'which may limit and hamper [the corporation's] activities and throw doubt upon its responsibility.' " *In re Cinderella Clothing Indus., Inc.,* 93 B.R. 373, 376 (Bankr.E.D.Pa.1988), quoting *North American Car Corp. v. Peerless Weighing & Vending Mach. Corp.,* 143 F.2d 938, 940 (2nd Cir.1944).[10] Clearly, the bankruptcy court's jurisdiction continues post-confirmation to "protect its [confirmation] decree, to prevent interference with the execution of the plan and to aid otherwise in its operation." *In re Dilbert's Quality Super Markets, Inc.,* 368 F.2d 922, 924 (2nd Cir.1966).

Courts have attempted to balance the need to retain jurisdiction post-confirmation with the need to end the reorganization process at some time. *See, e.g., In re*

**9.** Fed.R.Bankr.P. 7008(a) provides in material part that "[i]n an adversary proceeding before a bankruptcy judge, the complaint ... shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge." Fed.R.Bankr.P. 7012(b) provides in material part that "[a] responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to the entry of final orders or judgment by the bankruptcy judge." Both Pioneer, in its Complaint, and

First Tennessee, in its Intervening Complaint, aver that this is a core proceeding. The Cain Defendants, in their answer to the respective complaints, deny that this is a core proceeding. They do not, however, aver that this is a non-core proceeding.

**10.** *North American,* as are a number of other cases cited in this segment of the court's Memorandum, was decided under the Bankruptcy Act. These cases are nonetheless precedent for this court's consideration of this jurisdictional issue under the Bankruptcy Code.

*Hall's Motor Transit Co.*, 889 F.2d 520, 522–23 (3rd Cir.1989) ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the estate."); *Goodman v. Phillip R. Curtis Ent.*, 809 F.2d 228, 232 (4th Cir.1987) (Bankruptcy Code § 1142 "limits the authority of the court to matters concerning the implementation or execution of a confirmed plan.");[11] *Blair v. Finan (In re Elless Co.)*, 174 F.2d 925, 929 (6th Cir.1949) ("In confirming a plan of reorganization, the court may only retain jurisdiction in order to protect its decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation...."); *In re BankEast Corp.*, 132 B.R. 665, 667–68 (Bankr.D.N.H.1991) ("[T]he Court will retain jurisdiction only to the point of substantial consummation of the plan, as that term is defined in § 1101(2) of the Code, and subject to the restrictions in § 1127(b) of the Code."[12] (footnote omitted)); *Chase Manhattan Bank v. Sultan Corp. (In re Sultan Corp.)*, 81 B.R. 599, 602 (9th Cir. BAP 1987) ("The confirmation of a Chapter 11 plan does not automatically terminate the jurisdiction of the bankruptcy court.... The court must retain some jurisdiction after confirmation to ensure that the plan is properly consummated." (citations omitted)); *General Motors Acceptance Corp. v. Fortner Oilfield Serv., Inc. (In re Fortner Oil Field Serv., Inc.)*, 49 B.R. 9, 10 (Bankr. N.D.Tex.1984) ("[T]he court maintains [post-confirmation] jurisdiction sufficient to oversee the execution of the plan....

However ... there are certain preconfirmation incidences of jurisdiction that are lost or altered by the confirmation." (citation omitted)); *In re Morgan & Morgan, Inc.*, 24 B.R. 518, 521 (Bankr.S.D.N.Y.1982) ("The order of confirmation marked the commencement of the period when a debtor is weaned from dependence on the bankruptcy court's injunctive powers so as to stand on its own feet with respect to post-confirmation matters."); *In re Westholt Mfg., Inc.*, 20 B.R. 368, 372 (Bankr.D.Kan. 1982), *aff'd sub. nom. U.S. v. Redmond*, 36 B.R. 932 (D.C.Kan.1984) ("At confirmation, all the property of the estate is vested in the debtor, thereby terminating the estate's existence, although the court has continued jurisdiction under section 1142 to oversee the plan's execution." (footnote omitted)); *In re J.T. Gerken Trucking, Inc.*, 10 B.R. 203, 204 (Bankr.N.D. Ohio 1981) ("A confirming court's jurisdiction is limited to matters concerning the operation of the plan.").

This court's conclusion, based upon an analysis of the cases cited herein, is that the bankruptcy court's retention of post-confirmation jurisdiction, while limited, exists to ensure compliance with the provisions of title 11 and to ensure the proper execution and consummation of the debtor's plan. The Bankruptcy Code and Rules support this view. Judge Fox in *In re Cinderella Clothing Indus., Inc.*, stated it thusly:

"[S]ubstantial consummation" means—
 (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
 (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
 (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2) (West 1979).

 Code § 1127(b) provides in material part that "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan...." 11 U.S.C.A. § 1127(b) (West Supp.1992).

---

**11.** Bankruptcy Code § 1142 provides:
 (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.
 (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

 11 U.S.C.A. § 1142 (West Supp.1992).

**12.** Code § 1101(2) provides:

Whether emanating from the general power of courts to enforce their decrees, *see generally* 11 U.S.C. § 105(a),[13] or from specific bankruptcy code sections such as 11 U.S.C. § 1112 (allowing for conversion or dismissal after confirmation), § 1127 (allowing for plan modification after confirmation), § 1142 (allowing for plan enforcement postconfirmation), and § 1144 (allowing for revocation of confirmation), there exists a residue, albeit limited, of court authority over a confirmed chapter 11 case.

93 B.R. at 377 (citations omitted).

Bankruptcy Code §§ 105(a), 1112, 1127, 1142, and 1144 must also be read in conjunction with Fed.R.Bankr.P. 3020(d), which provides:

> **(d) Retained Power.** Notwithstanding the entry of the order of confirmation, the court may enter all orders necessary to administer the estate.

While clearly procedural, Rule 3020(d) nonetheless derives its authority from these substantive provisions of the Bankruptcy Code.

■ The Complaint filed by Pioneer and the Intervening Complaint filed by First Tennessee seek to enjoin the defendants from taking any action to impede Pioneer's execution and ultimate consummation of its Plan. This adversary proceeding does not purport to seek a determination of any state law issues nor will this court be required to answer any state law issues in order to dispose of the Complaint and Intervening Complaint. The relief sought is predicated entirely upon matters of bankruptcy law: whether all or a portion of the

taxes sought to be recovered by The Cain Partnership in the Knox County Circuit Court were discharged upon confirmation of Pioneer's Plan pursuant to Code § 1141(d); [14] whether the actions of The Cain Partnership and any other defendant who might be deemed accountable for initiating the Knox County Circuit Court action violate the injunctive provisions of Code § 524(a); [15] whether the actions of The Cain Partnership and any other defendant are designed to impede the execution and consummation of Pioneer's Plan; and to what relief, if any, are Pioneer and/or First Tennessee entitled. The bankruptcy court retained jurisdiction to consider these matters after confirmation of Pioneer's Plan. This court will not involve itself in matters related to breaches of the Colonial Lease alleged to have occurred after confirmation of Pioneer's Plan on October 19, 1990.

In sum, this court retains jurisdiction, at a minimum, to ensure that the provisions of title 11 are being carried out and that Pioneer's Plan is properly executed and consummated. The defendants are alleged to be interfering with the execution of the Plan. This court has jurisdiction to consider the issues raised in the Complaint and Intervening Complaint.

### CORE/NON–CORE PROCEEDING

The Cain Defendants next contend that the Complaint and Intervening Complaint raise non-core issues and that they do not consent to the entry of a final order and judgment by the bankruptcy judge.

Bankruptcy jurisdiction and procedure is governed by §§ 1334 and 157 of title 28 of

---

**13.** Code § 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105(a) (West Supp.1992).

**14.** *See supra* n. 8.

**15.** Section 524(a) provides in material part:

A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

11 U.S.C.A. § 524(a) (West Supp.1992).

the United States Code. Section 1334 of title 28 provides in material part:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C.A. § 1334 (West Supp.1992).

Section 157 of title 28 provides in material part:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C.A. § 157 (West Supp.1992).

Core proceedings are those proceedings in which the bankruptcy court is empowered to enter final orders and judgments. A nonexclusive list of matters deemed core proceedings is provided at 28 U.S.C.A. § 157(b)(2) (West Supp.1992). Non-core proceedings require, in the absence of the parties' consent, submission of proposed findings of fact and conclusions of law by the bankruptcy judge to the district court with any final order or judgment entered by the district judge. 28 U.S.C.A. § 157(c) (West Supp.1992), quoted *infra* at n. 17.

The bankruptcy judge, pursuant to 28 U.S.C.A. § 157(b)(3) (West Supp.1992), is required to determine whether the proceeding before it is core or non-core.[16] As the Cain Defendants question the jurisdiction of this court to hear and determine the claims of Pioneer and First Tennessee against them, this court must determine as a preliminary matter the status of these claims as core or non-core. *See Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 95 B.R. 782, 786 (Bankr.D.Colo. 1989), aff'd, 109 B.R. 968 (D.Colo.1989); *Carr v. Michigan Real Estate Insurance Trust (In re Michigan Real Estate Insurance Trust)*, 87 B.R. 447, 452 (E.D.Mich. 1988) ("[I]t is the bankruptcy judge's duty to determine whether or not a proceeding is a core proceeding.").

The burden of establishing the bankruptcy court's jurisdiction over the issues in dispute is upon Pioneer and First Tennessee. *Levovitz v. Verrazano Holding Corp. (In re Verrazano Holding Corp.)*, 86 B.R. 755, 762 (Bankr.E.D.N.Y.1988) ("[I]t is always the burden of the party alleging bankruptcy court jurisdiction to establish its existence over the matters in dispute.").

In its analysis of the meaning of "core proceedings," the Fifth Circuit has stated:

The meaning of core proceedings is illuminated ... by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over "core proceedings *arising under title 11, or arising in a case under title 11.*" The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings "arising under" title 11, "arising in" title 11 cases, and "related to" title 11 cases. Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable

---

**16.** 28 U.S.C.A. § 157(b)(3) (West Supp.1992) provides:

The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.

*Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir.1987) (emphasis in original).

The Fifth Circuit went on to state that the phrase "arising under title 11" describes "those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Id.* at 96. As to the second category of core proceedings, those "arising in" a case under title 11, the court stated:

> The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

825 F.2d at 97 (emphasis in original; footnote omitted).

A proceeding which neither "arises in" nor "arises under" a case under title 11 is non-core. As such the bankruptcy judge may nonetheless hear the proceeding if it "is otherwise related to a case under title 11." 28 U.S.C.A. § 157(c)(1) (West Supp. 1989).[17]

"Related" is not defined in § 157(c)(1). A leading treatise on bankruptcy states:

> In light of the *Marathon* case,[18] the legislative history surrounding the 1984 jurisdictional provisions and the post–1984 case law, it seems clear that cases encompassed by section 1334(b) "related proceedings" are those which (1) involve causes of action owned by the debtor that became property of the estate under section 541, and (2) concern *suits between third parties which in one way or another affect the administration of the title 11 case.*

1 *Collier On Bankruptcy*, ¶ 3.01[c][iv] (15th ed. 1992) (footnotes omitted; emphasis added). In *In re Verrazano Holding Corp.*, the court noted that "BAFJA[19] fails to give definition to 'related to' jurisdiction." 86 B.R. at 761.

Bankruptcy Judge Guy Cole, distinguishing between core and non-core proceedings, stated:

> Section 157 embodies the principles set forth in *Marathon*. The core/noncore dichotomy established by § 157 is based upon the distinction articulated by the *Marathon* plurality between the "restructuring of debtor-creditor relations which is at the core of the federal bankruptcy power" and the "adjudication of state-created private rights." *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615. Thus BAFJA distinguishes between proceedings "arising under" and "arising in," designated as core, which may be heard and determined by bankruptcy judges, who do not have Article III status, and "related" proceedings (like the breach of contract action in *Marathon*) involving common law actions which are merely peripherally related to the adjudication of bankruptcy under federal law.

**17.** The complete text of § 157(c) of title 28 reads:

> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
>
> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court,

with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C.A. § 157(c) (West Supp.1992).

**18.** *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

**19.** Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353.

*United Security & Communications, Inc. v. Rite Aid Corp. (In re United Security & Communications, Inc.),* 93 B.R. 945, 954 (Bankr.S.D. Ohio 1988) (footnote omitted).

If a proceeding is neither core nor non-core related, it is non-core and unrelated. Bankruptcy courts lack jurisdiction to determine "collateral disputes" between third parties which do not implicate the debtor or its property, *i.e.,* proceedings which are non-core and unrelated. *Wisconsin v. Marine Bank (In the Matter of Kubly),* 818 F.2d 643, 645 (7th Cir.1987) (" 'related to' jurisdiction encompasses only disputes that affect the payments to the bankrupt's other creditors or the administration of the bankrupt's estate."); *Valentine v. Bank of Commerce (In re Southern Industrial Banking Corporation),* 63 B.R. 331, 335 (Bankr.E.D.Tenn.1986).

■ Resolution of the claims asserted by Pioneer and First Tennessee in this adversary proceeding can only be determined by consideration of statutes enacted within the provisions of title 11, including 11 U.S.C.A. §§ 524(a) and 1141(d) (West 1979 & Supp. 1992). *See Wood,* 825 F.2d at 96; *Haden v. Edwards (In re Edwards),* 100 B.R. 973, 978 (Bankr.E.D.Tenn.1989). Thus, Pioneer and First Tennessee assert claims "arising under title 11." The court accordingly finds that this is a core proceeding under 28 U.S.C.A. § 157(b)(2) (West Supp.1992).

### ABSTENTION

■ The Cain Defendants next contend that the court should abstain from hearing this adversary proceeding pursuant to 28 U.S.C.A. § 1334(c)(2) (West Supp.1992), which provides:

> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under

this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain or not to abstain made under this subsection is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

The court has determined that this adversary proceeding is grounded upon claims "arising under title 11." By its terms, the mandatory abstention provisions of § 1334(c)(2) are clearly inapplicable. This section applies only to civil proceedings involving a state law claim or state law cause of action which is "related to a case under title 11," not those that arise under title 11 or arise in a case under title 11.

For the reasons stated herein, the motion of the Cain Defendants seeking dismissal of the Complaint and Intervening Complaint will be denied.

### III

### DEFENDANTS' MOTIONS TO DISMISS, FOR JUDGMENTS ON THE PLEADINGS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

All defendants have moved for dismissal of the Complaint and Intervening Complaint or for judgments on the pleadings. Additionally, as alternative relief, each defendant seeks a summary judgment. Supporting affidavits have been filed by Helen Cain Harkins, Geneva Cain Anderson, Jeannie B. Cain Corum Miller, and Larry E. Parrish. Counter affidavits have not been filed by Pioneer or First Tennessee.[20] As

---

**20.** In a scheduling order entered April 3, 1992, Pioneer and First Tennessee were given through May 11, 1992, to brief and respond to these terminal motions. Other than a motion filed by

First Tennessee seeking to dismiss its Intervening Complaint as to the defendants Anderson, Harkins, and Miller (*see supra* n. 1), no response has been forthcoming.

permitted by Fed.R.Civ.P. 12(b) and (c), incorporated into Fed.R.Bankr.P. 7012, the court will confine its analysis to the summary judgment aspects of the respective motions.

Bankruptcy Rule 7056 provides in material part:

**Summary Judgment.**

. . . .

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) **Motion and Proceedings Thereon.** ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

. . . .

(e) **Form of Affidavits; Further Testimony; Defense Required.** ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56, incorporated into Fed. R.Bankr.P. 7056.

"[T]he principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Wright, Miller & Kane, *Federal Practice and Procedure,* Civ.2d, § 2725, at 75 (1983). "[W]hen the only question is what legal conclusions are to be drawn from an established set of facts, the entry of a summary judgment usually should be directed." *Id.* at 85. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The undisputed facts determined from the pleadings and affidavits on file are as follows: [21]

1. The defendants Anderson, Harkins, and Miller are limited partners of the Partnership.

2. The defendants Anderson, Harkins, and Miller have never participated in the control of the Partnership's business with regard to any proceedings initiated by the Partnership in Pioneer's bankruptcy case nor did they participate in the control of the Partnership with regard to its complaint filed November 12, 1991, in the Knox County Circuit Court.

3. Larry E. Parrish is the president of the Partnership's general partner, The General Partner of Cain, Inc., and has been the Partnership's attorney in a number of legal proceedings involving Pioneer and the Colonial Lease.[22]

4. The Complaint and Intervening Complaint contain no specific averments of wrongdoing attributable to the individual defendants Anderson, Harkins, Miller and Parrish.

5. The only averments in the Complaint and Intervening Complaint purporting to state a claim against the defendants

---

**21.** Pioneer, in a Memorandum filed May 13, 1992, refers to alleged deposition testimony of the individual defendants in support of its contention that the various terminal motions should be denied. Pioneer's argument will not be considered as the depositions referred to have not been filed.

**22.** Mr. Parrish's affidavit, filed January 8, 1992, consists of five pages containing six numbered paragraphs. With the exception of paragraphs 1 and 2, which establish Mr. Parrish's residence and his affiliation with The Cain Partnership, the affidavit is of no probative value as it consists solely of conclusory and opinion statements.

Anderson, Harkins, Miller, and Parrish, individually, are contained at paragraphs 21 and 23, respectively. These paragraphs contain the following general averments:

Complaint:

21. The actions of all defendants, from the beginning of Pioneer's Chapter 11 case through and including November 12, 1991, clearly and conclusively established that defendants intent [sic] to take any action, justified or otherwise, to impede Pioneer's sale or assignment of Pioneer's interest in the real property and development of the remaining portion of the real property or otherwise consummating Pioneer's confirmed Plan of Reorganization, and that they will continue to do so unless and until restrained by this Court from taking such actions.

Intervening Complaint:

23. The actions of all defendants, from the beginning of Pioneer's Chapter 11 case through and including November 12, 1991, establishes that defendants intend to take any action, without regard to legal justification, to impede Pioneer's sale or assignment of Pioneer's interest in the real property or otherwise consummating the Plan, and that they will continue to do so unless and until restrained by this Court.

The Tennessee law regarding liability of general and limited partners for the obligations of a limited partnership is as follows: [23]

**61–2–302. Liability for obligations—Control of business.**—(a) Except as provided in subsection (d), a limited partner is not liable for the obligations of a limited partnership, unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he participates in the control of the business. However, if the limited partner does participate in the control of the business, he is liable only to persons who transact business with the limited partnership reasonably believing, based upon the limited partner's conduct, that the limited partner is a general partner.

Tenn.Code Ann. § 61–2–302 (1989).

**61–2–107. Liability of limited partner to creditors.**—A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business.

Tenn.Code Ann. § 61–2–107 (1980).

**61–2–403. Rights and powers—Liabilities....**

(b) Except as provided in this chapter, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to persons other than the partnership and the other partners. Except as provided in this chapter or in the partnership agreement, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to the partnership and to the other partners.[24]

Tenn.Code Ann. § 61–2–403 (1989).

**61–2–109. Authority of general partners.**—A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners....[25]

Tenn.Code Ann. § 61–2–109 (1980).

■ In sum, under Tennessee law, the defendants Anderson, Harkins, and Miller, as limited partners of The Cain Partnership, are not liable for the acts and obligations of the limited partnership where

**23.** Tennessee's version of the Uniform Limited Partnership Act, Tenn.Code Ann. §§ 61–2–101 to 61–2–130 (1980), was repealed by Acts 1988, Chapter 922, § 1, effective January 1, 1989, and is governed by Tennessee's Revised Uniform Limited Partnership Act, codified at Tenn.Code Ann. §§ 61–2–101 to 61–2–1208 (1989). Presumably, the Partnership was established under the now repealed Uniform Limited Partnership Act. As the Uniform Act and Revised Act contain similar provisions, reference is made to both.

**24.** Under Tennessee's Uniform Partnership Act, partners in a general partnership "are liable jointly and severally for everything chargeable to the partnership." Tenn.Code Ann. § 61–1–114 (1989).

**25.** *Supra* n. 23.

they have not participated in the control of the partnership's business. Conversely, the defendant, The General Partner of Cain, Inc., general partner of The Cain Partnership, is jointly and severally liable for everything chargeable to the limited partnership.

Finally, the Complaint and Intervening Complaint aver no specific acts of wrongdoing attributable to the defendant, Larry E. Parrish, individually. Such is not the case, however, with respect to Pioneer's proposed amended complaint, which the court will discuss in subsequent pages.

In addressing the burden of the moving party under Rule 56, Justice Rehnquist, speaking for a majority of the Supreme Court, has stated:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party meets this responsibility, the Court determined that Rule 56(e) requires the nonmoving party to go beyond the pleadings and to produce evidentiary material in the form identified at Rule 56(c) sufficient to designate specific facts showing that there is a genuine issue for trial. *Id.* In the instant proceeding, the defendants Anderson, Harkins, Miller and Parrish have met their burden under Rule 56 with respect to Pioneer's Complaint as filed November 20, 1991, and First Tennessee's Intervening Complaint. However, Pioneer's proposed amended complaint, tendered March 17, 1992, adequately states a claim against Larry E. Parrish which is not subject to his motion for judgment on the pleadings or for summary judgment. The nonmoving parties, Pioneer and First Ten-

nessee, have not met their burden under Rule 56(e) by setting forth specific facts showing that there is a genuine issue for trial.

This court's review of the pleadings and affidavits, including Pioneer's proposed amended complaint, establish that no genuine issue of material fact remains for trial and that summary judgment is appropriate as to the defendants Anderson, Harkins, and Miller. Summary judgment is, however, inappropriate as to the defendants, The Cain Partnership, The General Partner of Cain, Inc., and Larry E. Parrish.

## IV

### PIONEER'S MOTION TO AMEND COMPLAINT

By its Motion To Amend Complaint filed March 17, 1992, Pioneer seeks to amend its Complaint filed November 20, 1991, to add First Tennessee Bank National Association, Trustee for the Lillie Mae Cain Testamentary Trust, as a party defendant. In addition to the relief sought in its original Complaint, Pioneer, through its proposed amended complaint, seeks an order compelling The Cain Partnership to dismiss an action commenced March 7, 1992, in the Chancery Court for Shelby County, Tennessee. While Pioneer's proposed amended complaint retains intact, with minor variations in language and changes in paragraph numbers, those same averments contained in its original Complaint, it seeks to particularize claims previously stated in its original Complaint and to amplify those claims by adding the following paragraphs: [26]

8. First Tennessee Bank National Association is a national banking association organized under the laws of the United States and it is sued in its capacity as the successor trustee of the Lillie Mae Cain Trust (the "Trust") which is a limited partner of The Cain Partnership.

---

26. The court, except where essential to the continuity of an averment, has eliminated references in the quoted paragraphs to Exhibits A, B,

and C, appended to the proposed amended complaint.

....

20. The complaint in the Knox County Action, to the extent it is based on property taxes assessed by Knox County and the City of Knoxville on the leased premises for the years 1989 and 1990, is groundless because, pursuant to 11 U.S.C. § 1141(d), the Confirmation Order discharged Pioneer from any claims of the Cain Partnership that arose prior to the date of confirmation; therefore, the Knox County Action violates the provisions of 11 U.S.C. § 524 which prohibits any action to collect a debt which has been discharged.

....

22. On March 7, 1992, The Cain Partnership and the Trust beneficiaries filed another lawsuit against Pioneer and First Tennessee Bank National Association in the Chancery Court for Shelby County, Tennessee, styled *The Cain Partnership, Ltd., et al. v. First Tennessee Bank National Ass'n., et al.*, docket no. 101170–1 (the "Shelby County Action").

23. In the Shelby County Action, which was signed and filed by Parrish as the attorney for plaintiffs and as president of Cain, Inc., Parrish admits on behalf of The Cain Partnership and the Trust beneficiaries that on March 6, 1992, Parrish was advised of preliminary discussions aimed at attempting to fashion a settlement agreement to enable Pioneer to sell the Towne & Country Shopping Center.

24. The day after Parrish was informed that settlement negotiations were underway that would enable Pioneer to sell the Towne & County [sic] Shopping Center, and that a necessary element of said settlement would be the agreement of the Trust, Parrish commenced the Shelby County Action. The Shelby County Action was commenced on a Saturday, which was March 7, 1992, and on that same day Parrish obtained in the Shelby County Action a temporary restraining order prohibiting First Tennessee Bank National Association, in its ca-pacity as Trustee of the Trust, "from taking any action or making any decisions for or in any way from acting for or on behalf of Lillie Mae Cain, testamentary trust before March 24, 1992."

25. The temporary restraining order obtained by Parrish in the Shelby County Action effectively prohibits proceeding with the settlement discussions that were underway that would have allowed Pioneer to sell the Towne & Country Shopping Center.

26. In ¶ 62 of the Shelby County Action, Parrish admits that it has been his intent, and continues to be his intent, as well as that of The Cain Partnership, to terminate the Pioneer Lease.

27. Pioneer alleges and avers that the filing of the Knox County Action on the heels of Pioneer's serving notice of its intent to sell the Towne & Country Shopping Center, and the filing of the Shelby County Action on the heels of Parrish being informed of settlement discussions that would enable Pioneer to sell the Towne & Country Shopping Center, evidence a "litigation strategy" on the part of The Cain Partnership, Parrish, the limited partners of The Cain Partnership, and the Trust beneficiaries, to harass and obstruct Pioneer in its efforts to successfully implement its confirmed plan of reorganization.

28. Since March of 1988, Mack A. Gentry, Esquire ("Gentry") has been the attorney for the Trust.

29. Gentry and Parrish were law school classmates.

30. Prior to Gentry becoming the attorney for the Trust, the attorney for the Trust was Bill Wilson.

31. Prior to Bill Wilson being removed as attorney for the Trust, Parrish approached Gentry about representing the Trust. Thereafter, the trust beneficiaries forwarded to Valley Fidelity Bank and Trust, in its capacity as trustee of the Trust ("Valley Bank"), requests that Bill Wilson be replaced by Gentry as the attorney for the Trust.

32. Parrish and Gentry have collaborated and Gentry, in his capacity as at-

torney for the Trust, has endorsed and encouraged Parrish to pursue a "litigation strategy" that would prevent Pioneer from consummating the confirmed plan of reorganization. In fact, by virtue of an agreement between the Partnership and the Trust dated August 15, 1990 ... the Trust has a direct pecuniary interest, separate and apart from its limited partnership interests, in "any litigation in which the Partnership is now or later becomes a party." Exhibit C[27] provides, as follows, in ¶ 6:

> The Partnership hereby assigns, to become effective the day after the Partnership has fully liquidated all the indebtedness to the Trust more particularly specified in the preceding paragraph, 55% of all revenue received by the Partnership from any litigation in which the Partnership is now or later becomes a party, less an amount necessary for the Partnership to pay its reasonable expenses related to the litigation.

33. Exhibit C also provides, as follows, in ¶ 8:

> The parties agree that the Partnership shall submit in writing to the Trust, before presenting it to the Partnership's adversary, any proposal by which the Partnership offers or solicits an offer to settle any litigation in which the Partnership is a party. The Trust shall have the absolute right to approve or disapprove such proposal and the Partnership shall present such proposal to its adversary only with the prior written consent of the Trust, which may be withheld for any reason. The Partnership also agrees that the Trust, or its authorized agents, may immediately initiate contact with the Partnership's adversaries in any litigation, in an attempt to solicit or negotiate proposals designed to settle the litigation and/or pre-litigation disputes by making settlement recommendations to the Partnership.

The Trust, by virtue of the above-quoted provision in Exhibit C, has been conferred powers much greater than and inconsistent with the Trust's status as a limited partner in the Partnership. The above-quoted provision from Exhibit C has conferred on the Trust the powers of a general partner, giving the Trust "veto power" over any settlement involving the Partnership.

34. Gentry, in his capacity as attorney for the Trust, has initiated contact with agents of parties in privity with Pioneer in an effort to thwart Pioneer's attempts to sell the Towne & Country Shopping Center.

Fed.R.Civ.P. 15(a), incorporated into Fed. R.Bankr.P. 7015, provides in material part that after a responsive pleading has been served "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The Sixth Circuit has freely allowed the amendment of pleadings in the absence of substantial prejudice to the opposing party. *Lawson v. Truck Drivers, Chauffeurs, & Helpers, Etc.*, 698 F.2d 250, 256 (6th Cir.1983), *cert. denied sub nom. Leach v. U.S. Postal Service*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), and cases cited therein.

■ Pioneer's proposed amended complaint serves only to add a party defendant, to assert claims against that defendant, and to restate or amplify previously asserted claims against The Cain Partnership, The General Partner of Cain, Inc., and Larry E. Parrish. To the extent Pioneer's original Complaint is deficient in the averment of its claims against Larry E. Parrish, that deficiency is cured in the proposed amended complaint. The court finds no prejudice to any party defendant by allowing the proposed amended complaint as to the three defendants, The Cain Partnership, The General Partner of Cain, Inc., and Larry E. Parrish. However, the proposed amended complaint is insufficient to bolster

**27.** Exhibit C to the proposed amended complaint is an "Agreement" dated August 15, 1990, between Valley Fidelity Bank and Trust Company, trustee under the Last Will and Testament of Lillie Mae Cain, and The Cain Partnership.

Pioneer's claims against the defendants Geneva Cain Anderson, Helen Cain Harkins, and Jeannie B. Cain Corum Miller. Accordingly, for the reasons previously discussed in Part III of this Memorandum, the proposed amended complaint will not be allowed as to these three defendants.

In sum, Pioneer's proposed amended complaint tendered March 17, 1992, will be allowed for the purpose of adding a defendant, First Tennessee Bank National Association, Trustee for the Lillie Mae Cain Testamentary Trust, and for the purpose of amplifying Pioneer's claims against The Cain Partnership, The General Partner of Cain, Inc., and Larry E. Parrish. The proposed amended complaint will not be allowed as to the defendants Geneva Cain Anderson, Helen Cain Harkins, and Jeannie B. Cain Corum Miller. Pioneer will have fourteen (14) days within which to file its amended complaint in a manner consistent with the findings set forth in this Memorandum. Further, as permitted by Fed. R.Bankr.P. 7012, the court will reduce the time within which First Tennessee Bank National Association, Trustee for the Lillie Mae Cain Testamentary Trust, shall answer the amended complaint to fourteen (14) days after issuance of the summons.

## V

In an effort to avoid any potential ambiguity in the court's findings and to preclude the filing of duplicative motions by the remaining defendants upon Pioneer's filing of its amended complaint, the court expressly finds that its ruling on the various terminal motions which are the subject of this Memorandum are applicable to Pioneer's amended complaint.

An appropriate Order consistent with the findings contained herein will be entered.

## ORDER

For the reasons set forth in the "Memorandum On Defendants' Motions To Dismiss, For Judgments On The Pleadings Or, Alternatively, For Summary Judgment, And On Plaintiff's Motion To Amend Complaint" filed this date, the court directs the following:

1. That the motion of the defendant, Jeannie B. Cain Corum Miller, filed Decem-

ber 20, 1991, requesting dismissal of the Complaint filed by the plaintiff, or, alternatively, summary judgment, is GRANTED. The Complaint filed on November 20, 1991, by the plaintiff is DISMISSED as to this defendant.

2. That the joint motion filed January 10, 1992, by the defendants, Geneva Cain Anderson and Helen Cain Harkins, requesting a judgment on the pleadings, or, alternatively, summary judgment, is GRANTED. The Complaint filed by the plaintiff on November 20, 1991, is DISMISSED as to these defendants.

3. That the joint motion filed January 10, 1992, by the defendants, The Cain Partnership, Ltd., The General Partner of Cain, Inc., and Larry E. Parrish, requesting a judgment on the pleadings, or, alternatively, summary judgment as to the plaintiff's Complaint filed November 20, 1991, and as to the Intervening Complaint filed by First Tennessee Bank National Association on December 20, 1991, is DENIED, provided, however, that the Intervening Complaint is dismissed as to the defendant, Larry E. Parrish.

4. That the motion filed April 8, 1992, by the defendants, The Cain Partnership, Ltd., The General Partner of Cain, Inc., Larry E. Parrish, Geneva Cain Anderson, and Helen Cain Harkins, requesting the court to dismiss the Complaint filed by the plaintiff on November 20, 1991, and the Intervening Complaint filed by First Tennessee Bank National Association on December 20, 1991, due to lack of subject matter jurisdiction, is DENIED.

5. That the "Motion To Amend Complaint" filed by the plaintiff on March 17, 1992, requesting that it be permitted to amend its Complaint filed November 20, 1991, to, *inter alia*, add First Tennessee Bank National Association, Trustee for the Lillie Mae Cain Testamentary Trust, as a party defendant, is GRANTED.

6. That the plaintiff shall restate and file its amended complaint tendered March 17, 1992, to conform to the court's Memorandum filed this date within fourteen (14) days.

7. That upon the filing of the amended complaint, the clerk shall issue an appropri-

ate summons as to the defendant First Tennessee Bank National Association, Trustee for the Lillie Mae Cain Testamentary Trust, and this defendant shall answer the amended complaint within fourteen (14) days from the date of issuance of the summons.

8. That as to all issues raised in the plaintiff's Complaint filed November 20, 1991, in the proposed amended complaint tendered by the plaintiff on March 17, 1992, and in the Intervening Complaint filed by First Tennessee Bank National Association on December 20, 1991, this proceeding is a core proceeding under 28 U.S.C.A. § 157(b)(2) (West Supp.1992).

SO ORDERED.