**In re SOUTHERN INDUSTRIAL BANKING CORPORATION d/b/a Daveco, Debtor.**

**Clive VALENTINE and wife, Barbara Gayle Valentine, Plaintiffs,**

v.

**BANK OF COMMERCE; First Tennessee Bank National Association; and Thomas E. DuVoisin, Liquidating Trustee, Defendants.**

**Bankruptcy No. 3–83–00372.**
**Adv. No. 3–83–0885.**

United States Bankruptcy Court, E.D. Tennessee.

July 10, 1986.

William B. Felknor, J. Bradley Allison, Maryville, Tenn., for plaintiffs.

Dearborn & Ewing, James R. Kelley, Nashville, Tenn., for defendants Bank of Commerce and DuVoisin.

Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Craig J. Donaldson, William S. Lockett, Knoxville, Tenn., for defendant First Tennessee Bank, N.A.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Plaintiffs seek to reverse a prepetition transfer of their promissory note by Southern Industrial Banking Corporation (SIBC) to First Tennessee Bank (FTB). Plaintiffs contend the transfer was part of a fraudulent scheme designed to defeat their setoff rights, 11 U.S.C.A. § 553 (West 1979), and that FTB knew or should have known that the transfer involved fraud. Defendant Bank of Commerce, successor in interest to SIBC and the holder of plaintiffs' note to SIBC, counterclaims seeking judgment on the note.

### I

On March 10, 1983, SIBC filed a chapter 11 petition. On the petition date FTB held a note, dated June 8, 1982, executed by plaintiffs in favor of SIBC, and plaintiff Barbara Valentine owned a $100,000.00 investment certificate issued by SIBC. As a creditor of SIBC, under the provisions of the modified plan of reorganization confirmed by this court, Barbara Valentine is entitled to a federally insured certificate of deposit from Bank of Commerce in the amount of 27.30% of her allowed claim in the SIBC case, shares of preferred stock in Bank of Commerce, a contingency interest certificate entitling her to a potential distribution from a liquidating trust, and warrants to purchase common stock in Bank of Commerce.

In June 1982, less than one year before the SIBC bankruptcy filing, plaintiffs obtained a $126,000.00 loan from SIBC to purchase a 57–acre tract. In exchange for the loan plaintiffs executed their note, dated June 8, 1982, for $313,297.08 [1] in favor of SIBC. The note provides for 114 monthly payments of $2,748.22 beginning December 10, 1982. To secure their debt to SIBC plaintiffs gave their deed of trust on both the 57–acre tract and a 20–acre tract they already owned. Additionally, plaintiffs assigned their interest in a six-month $100,000.00 investment certificate (no. 29104) issued by SIBC on June 8, 1982. (The funds used to purchase the SIBC investment certificate were the sole property of Barbara Valentine.)

When the $100,000.00 investment certificate matured in December 1982, plaintiffs

---

**1.** This sum includes a finance charge of $186,843.08.

wanted to remove Mrs. Valentine's money from SIBC. According to Barbara Valentine she was told that "board approval" was necessary to remove her funds. She agreed to reinvest her money and received a second six-month $100,000.00 investment certificate (no. 37930) only after she was told she could not have her money.

On February 18, 1983, in an attempt to meet the demand for cash by its investment certificate holders, SIBC agreed to sell to FTB certain consumer installment loans with a net unpaid principal balance exceeding $10,000,000.00. Plaintiffs' note to SIBC was among those sold to FTB. Pursuant to a letter dated February 24, 1983, FTB notified plaintiffs that it had purchased their note to SIBC and that future payments should be made to FTB. According to plaintiffs, when they told FTB to setoff the $100,000.00 SIBC investment certificate against their note indebtedness, Marsh Campbell, an FTB vice president, told them that FTB did not have their SIBC investment certificate.

Plaintiffs did not make any payments to FTB. Consequently, on September 13, 1983, FTB sent plaintiffs a default notice declaring the entire unpaid balance on their note immediately due and payable.

On October 28, 1983, plaintiffs commenced the instant adversary proceeding against Irwin A. Deutscher, trustee for SIBC. Plaintiffs asked the court to either compel Deutscher, as trustee for SIBC, or permit them, to take appropriate action against FTB. In his answer, Deutscher requested dismissal of the complaint because plaintiffs had not alleged facts which would require a bankruptcy trustee to seek to avoid a transfer pursuant to 11 U.S.C.A. § 548 (West 1979).

On February 7, 1984, the court entered an agreed order permitting joinder of FTB as a party defendant. However, on March 15, 1984, through their former attorney, Ben D. Brabson, Jr., plaintiffs filed a motion reciting that their obligation had been repurchased by SIBC or its successor in interest (Bank of Commerce) making joinder of FTB unnecessary. Indeed, on February 27, 1984, FTB charged the SIBC loan loss reserve account, established under the February 18, 1983 agreement, in the amount of $169,945.64 and returned the original note to the former SIBC headquarters office. Further, a letter dated February 29, 1984, from FTB to SIBC recites:

> On February 27, 1984 we charged the above [plaintiffs'] loan to the SIBC Loan Loss Reserve and reassigned the original note to SIBC. This loan was also secured by a [sic] Investment Certificate in the amount of $100,000.00.

> Please find enclosed with this letter the original Investment Certificate Number 37930 dated December 30, 1982.

Pursuant to an agreed order entered May 31, 1984, Bank of Commerce was substituted in place of Irwin A. Deutscher, SIBC trustee, as the defendant in the instant proceeding. Insisting that the SIBC investment certificate should be setoff against their debt, plaintiffs refused to make payments to Bank of Commerce on their note. Bank of Commerce threatened to foreclose the deed of trust securing plaintiffs' note. After they reportedly were told by their former attorney, Ben D. Brabson, Jr., that it was their only option, plaintiffs agreed to an auction sale of the real estate security.[2] The auction sale generated net proceeds of $67,472.28. Pursuant to agreement, these proceeds are being held by Ben D. Brabson, Jr. in an escrow account subject to the lien claim of Bank of Commerce.[3]

After the auction sale, held in October 1984, plaintiffs dismissed Mr. Brabson and retained William Felknor as their attorney.

---

2. It is unclear whether both the 57–acre and the 20–acre tracts were auctioned. At trial Barbara Valentine testified that plaintiffs had lost both tracts. But the warranty deed (Exh. 34) from plaintiffs to the successful bidders at the auction covers only the 57–acre tract.

3. As of July 16, 1985, Brabson was holding $69,960.32 in a money market investment account.

On February 20, 1985, plaintiffs moved for permission, which was granted, to file an amended complaint. Pursuant to their amended complaint, plaintiffs sought to void their entire transaction (their purchase of the $100,000.00 SIBC investment certificate and execution of their $313,297.08 note secured by a deed of trust and the $100,000.00 investment certificate) with SIBC; to impose a constructive trust on their $100,000.00 investment certificate; to avoid any transfer of their note between SIBC, FTB, or Bank of Commerce; and to recover actual and punitive damages in an amount not exceeding $500,000.00 "for the frauds, coercion, intimidation, falsehoods, conspiracies, misrepresentations, and outrageous conduct perpetrated upon them...." Plaintiffs alleged that, in violation of federal and state law, SIBC had required the purchase of the $100,000.00 investment certificate and the procurement of life insurance as conditions of the June 8, 1982 loan. Plaintiffs further alleged the loan was usurious on its face and that SIBC, FTB, Bank of Commerce and "the [bankruptcy] trustee or trustees" of SIBC had conspired to convert the $100,000.00 belonging to Barbara Valentine.

Plaintiffs' amended complaint added as defendants FTB and Thomas DuVoisin, trustee of a liquidating trust created under the SIBC reorganization plan. FTB admits it purchased plaintiffs' note to SIBC in February 1983, but denies any wrongdoing. Also, FTB cross-claims against Bank of Commerce, which FTB alleges is responsible for any and all claims asserted by plaintiffs. DuVoisin avers that plaintiffs' note was never an asset of the SIBC liquidating trust and requests dismissal of the complaint against him.

■ On July 19, 1985, Bank of Commerce moved to dismiss claims asserted by plaintiffs in their amended complaint arising prior to the confirmation of the SIBC plan for which a timely proof of claim was

not filed. Though plaintiffs did timely file a proof of claim in the SIBC case for $100,000.00 plus interest, the only basis for their claim, filed on their behalf by Jerry K. Galyon, is Barbara Valentine's investment certificate (no. 37930). No claim was filed based on coercion, conspiracy, fraud, intimidation, misrepresentation or violation of federal and state law, as alleged in the amended complaint. On August 19, 1985, this court entered its memorandum and order reciting in part:

> Section 1141(d)(1) of Title 11 of the United States Code enacts in part: "Except as otherwise provided ... in the plan ... the confirmation of a plan—(A) discharges the debtor from any debt that arose before the date of such confirmation...." 11 U.S.C.A. § 1141(d)(1) (1979). Bank of Commerce contends plaintiffs' claims associated with the execution of their note to SIBC must be disallowed because they arose prior to confirmation of debtor's plan. Bank of Commerce is correct insofar as plaintiffs seek damages for claims connected with their note to SIBC.
>
> The motion of Bank of Commerce to dismiss plaintiffs' claims arising prior to January 20, 1984, for which a timely proof of claim was not filed is GRANTED, except that plaintiffs may pursue the relief requested in their original complaint, filed previous to the bar date for filing proofs of claim.

Hence, insofar as plaintiffs' claims for relief, the only issue before this court is whether their note to SIBC was fraudulently transferred with the intent to defeat any right of setoff based on the $100,000.00 investment certificate.[4]

## II

With exceptions immaterial section 553(a) of Title 11 of the United States Code enacts:

---

4. Order No. 66 in the SIBC case fixed November 28, 1983, as the bar date for filing claims. Consideration of the merit of the claims against SIBC asserted by plaintiffs in their amended complaint is precluded due to plaintiffs' (or their attorneys') failure to file a proof of claim based on those claims.

[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C.A. § 553(a) (West 1979).

 On the SIBC bankruptcy petition date plaintiffs were not entitled to setoff their claim against SIBC, based on the $100,000.00 investment certificate, against their note indebtedness because FTB, not SIBC, held their note. Although plaintiffs allege the transfer to FTB of their note was part of a fraudulent scheme designed to defeat their setoff rights, they did not introduce any evidence of fraud on FTB's part. One point is troublesome. When plaintiffs told FTB to setoff the $100,-000.00 SIBC investment certificate against their note indebtedness, they were reportedly told that FTB was unaware of any investment certificate.[5] Yet, FTB undeniably became aware of and obtained possession of the SIBC investment certificate (no. 37930) at some point. Nonetheless, the reason the setoff was not effected is presently a matter of conjecture.[6] Plaintiffs have not introduced any evidence that the transfer of their note by SIBC to FTB pursuant to the February 18, 1983 agreement involved fraud.[7]

### III

The question remains whether this court has jurisdiction of the counterclaim by Bank of Commerce seeking judgment on the note and recovery of the auction proceeds held in escrow by Mr. Brabson. Bank of Commerce contends that its counterclaim is within the ancillary jurisdiction of this court. The counterclaim does not involve a debtor in bankruptcy; nor does it involve property of a bankruptcy estate.

A court of bankruptcy has no power to entertain collateral disputes between third parties that do not involve the bankrupt or its property ... nor may it exercise jurisdiction over a private controversy which does not relate to matters pertaining to bankruptcy.

*Uranga v. Geib (In re Paso Del Norte Oil Co.)*, 755 F.2d 421, 424 (5th Cir.1985) (citations omitted).

This court is not the appropriate forum for resolution of the Bank of Commerce counterclaim.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

5. The date of plaintiffs' setoff instruction—apparently the instruction was oral—is not established in the record. However, it was surely subsequent to February 24, 1983, the date of the letter notifying plaintiffs that FTB had acquired their note from SIBC.

6. However, the reason may be an issue for proof in a different forum in an action by Bank of Commerce to enforce plaintiffs' note. See section III of this Memorandum.

7. At trial the plaintiffs did not call any witness associated with FTB.