In re BLUE DIAMOND COAL COMPANY, Debtor.

CUMBERLAND RIVER COAL COMPANY, Plaintiff,

v.

UNITED STATES of America, on Behalf of its Agency the DEPARTMENT OF LABOR, and Blue Diamond Coal Company, the Reorganized Debtor, Defendants.

Bankruptcy No. 91–32611.
Adv. No. 93–3062.

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 4, 1994.

Wyatt, Tarrant & Combs, Chauncey S.R. Curtz, Barbara B. Edelman, Solomon Lee Van Meter, Lexington, KY, Wyatt, Tarrant, Combs, Gilbert & Milom, James S. Mathis, Nashville, TN, and Rice, Huff & Hendrickson, H. Kent Hendrickson, Harlan, KY, for plaintiff Cumberland River Coal Co.

Carl K. Kirkpatrick, U.S. Atty., Pamela G. Steele, Asst. U.S. Atty., Knoxville, TN, John G. Interrante, J. Christopher Kohn and Tracy J. Whitaker, U.S. Dept. of Justice, Commercial Litigation Branch, Civ. Div., Washington, DC, for defendant U.S. and its agency, the Dept. of Labor.

Hodges, Doughty & Carson, Thomas H. Dickenson, Knoxville, TN, for defendant Blue Diamond Coal Co.

### MEMORANDUM ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ON DEFENDANT UNITED STATES OF AMERICA'S MOTIONS TO DISMISS AND TO STAY ADVERSARY PROCEEDING

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The plaintiff, Cumberland River Coal Company (Cumberland), commenced this adversary proceeding on May 17, 1993. By its Complaint, Cumberland seeks a declaration that the United States Department of Labor (DOL) is prevented from imposing liability upon it under the Black Lung Benefits Act (30 U.S.C.A. §§ 901 through 945 (West 1986 & Supp.1993)) and the Black Lung Disability Trust Fund (26 U.S.C.A. § 9501 (West 1989)) as the "successor operator" of a coal mining operation purchased from the reorganized debtor, Blue Diamond Coal Company (Blue Diamond), on August 13, 1990. Cumberland contends that under the terms of a Settlement Agreement entered into between Blue Diamond and the DOL on December 10, 1992, during the pendency of Blue Diamond's Chapter 11 case, the DOL released it from liability for black lung claims and is thus barred from asserting such claims against it. Cumberland also seeks costs and attorneys' fees incurred in the prosecution of its Complaint.

The court has before it the "Defendant United States Of America's Motion To Dismiss" (Motion To Dismiss) filed by the DOL on July 20, 1993. The Motion To Dismiss is premised on the DOL's contention that this court lacks subject matter jurisdiction and that Cumberland's Complaint fails to state a claim upon which relief can be granted. The DOL accordingly seeks dismissal of the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6), incorporated into Fed.R.Bankr.P. 7012. Further, the DOL raises a second jurisdictional issue grounded upon its contention that there has been no waiver of its sovereign immunity.

The court also has before it a "Motion For Summary Judgment" filed by Cumberland on September 27, 1993. Cumberland grounds this motion on the substance of the December 10, 1992 Settlement Agreement entered into between Blue Diamond and the DOL. Finally, on December 14, 1993, the DOL filed a second motion entitled "Defendant United States Of America's Motion To Stay This Adversary Proceeding" by which it asks the court to stay further prosecution of this adversary proceeding pending resolution of an objection filed by Blue Diamond in its bankruptcy case to Cumberland's proof of claim.

The record before the court essential to a disposition of the various motions consists of the pleadings, exhibits, and an affidavit filed by the DOL. Further, the court takes judicial notice of the terms of Blue Diamond's confirmed plan of reorganization, the proof of claim filed by Cumberland in Blue Diamond's bankruptcy case, and the objection to Cumberland's claim filed by Blue Diamond. Fed. R.Evid. 201.

1. The Purchase Agreement was actually entered into by Cumberland's predecessors in interest, Arch Mineral Corporation, Arch Holding Company, Ark Land Company and Arch Coal Sales (collectively, "Arch"). For purposes of this proceeding, the court makes no distinction between Arch and Cumberland and will refer to the entities exclusively as Cumberland.

2. The Purchase Agreement is not part of the record before the court. As neither Blue Diamond nor the DOL dispute this provision in the Purchase Agreement, the court, for purposes of this Memorandum, will accept this representation by Cumberland as fact.

# I

## BACKGROUND

On August 13, 1990, prior to Blue Diamond's commencement of its Chapter 11 case, Cumberland entered into an Agreement Of Purchase And Sale Of Assets (Purchase Agreement) with Blue Diamond by which it acquired the assets comprising Blue Diamond's underground coal mining operations in Wise County, Virginia, and Letcher County, Kentucky, known as the Scotia Mines.[1] In the Memorandum filed in support of its Motion For Summary Judgment, Cumberland avers that under the terms of Section 13 of the Purchase Agreement Blue Diamond agreed to indemnify it for claims of the debtor's former employees regarding occupational diseases.[2]

Under the Black Lung Benefits Act, a coal operator is responsible for payment, and securing the payment of, benefits for its former employees who have developed, or who will develop, totally disabling coal workers pneumonoconiosis arising out of employment with the operator. 30 U.S.C.A. § 932 (West 1986). Accordingly, pursuant to regulations promulgated by the Secretary of Labor, Blue Diamond, at the time it sold the Scotia Mines to Cumberland, was considered the "responsible operator" liable for the benefit payments owed those miners whose last coal mine employment, totalling at least one year, was for Blue Diamond. 20 C.F.R. § 725.493(a)(1).

Subsequent to Cumberland's acquisition of the Scotia Mines, the DOL, under the authority of § 932(i)(1) of the Black Lung Benefits Act[3] and implementing regulations, has

3. Section 932 provides in material part:

**(i) Subsequent operators' liability for benefit payments**

(1) During any period in which this section is applicable to the operator of a coal mine who on or after January 1, 1970, acquired such mine or substantially all the assets thereof, from a person (hereinafter in this subsection referred to as a "prior operator") who was an operator of such mine, or owner of such assets on or after January 1, 1970, such operator shall be liable for and shall, in accordance with section 933 of this title, secure the payment of all benefits which would have been payable by the prior operator under this sec-

endeavored to impose liability on Cumberland for the black lung claims of certain of Blue Diamond's former employees who worked at the Scotia Mines.

Blue Diamond filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 17, 1991. Its Fourth Amended Plan Of Reorganization (Plan) was confirmed on December 11, 1992. Pursuant to Article V of the Plan entitled EXECUTORY CONTRACTS, certain executory contracts and unexpired leases identified by Blue Diamond in an exhibit appended to its Plan were assumed upon confirmation. All contracts not expressly assumed were deemed rejected. The August 13, 1990 Purchase Agreement relating to Cumberland's acquisition of the Scotia Mines was not identified by Blue Diamond as an executory contract which it would assume. On January 11, 1993, Cumberland filed a claim seeking unspecified damages arising from Blue Diamond's alleged rejection of the Purchase Agreement as an executory contract. On February 2, 1993, Blue Diamond filed an objection to Cumberland's claim denying, generally, all liability. In the Memorandum filed September 27, 1993, in support of its summary judgment motion, Cumberland acknowledges that, by its proof of claim, it seeks indemnification from Blue Diamond for all sums it might ultimately be required to pay to the DOL under the Black Lung Benefits Act as a successor operator of the Scotia Mines. Blue Diamond, in its answer to Cumberland's Complaint filed on July 9, 1993, contends, as does Cumberland, that the December 10, 1992 Settlement Agreement bars the DOL from asserting any black lung claims against Cumberland. If Blue Diamond is correct, then Cumberland has no claim against Blue Diamond in its bankruptcy case.

On the date Blue Diamond commenced its Chapter 11 case, the DOL had claims pending against it under the Black Lung Benefits Act and the Black Lung Disability Trust Fund. These claims were resolved under the terms of the December 10, 1992 Settlement Agreement. By the Settlement Agreement, the DOL agreed to "release from liability all parties including Blue Diamond" from black lung claims upon confirmation of the Plan in exchange for Blue Diamond's agreement: (1) to allow the DOL to receive approximately $442,000 of negotiable securities held by the Federal Reserve in a fund identified as the "Reserve Fund" and to pay the proceeds from this Fund into the Black Lung Disability Trust Fund; (2) to make twenty-eight quarterly payments of $75,000 each to the Black Lung Disability Trust Fund; and (3) to pay into the Black Lung Disability Trust Fund any proceeds from the refund of a bond held by Utica Mutual Insurance Company in the amount of $1,075,000. Specifically, as material to Cumberland's Motion For Summary Judgment, the Settlement Agreement contains the following provisions:

### SETTLEMENT AGREEMENT

Settlement Agreement, dated December 10, 1992, by and among BLUE DIAMOND COAL COMPANY ("Blue Diamond"), the United States of America, on behalf of its agency, the DEPARTMENT OF LABOR ("DOL"). Blue Diamond and DOL are hereinafter referred to as the "Parties."

. . . .

NOW, THEREFORE, in consideration of the mutual covenants contained herein ... the Parties do agree as follows:

1. Any and all claims, (including, without limitation, the Black Lung Claims or any subrogated claims under the Black Lung Act; but excluding any claims arising from workers whose employment with Blue Diamond terminated on or after June 19, 1991, when Blue Diamond obtained third party insurance coverage) that have been or may be asserted now or in the future, by the DOL either directly or by subrogation or in any manner whatsoever against Blue Diamond or the reorganized Blue Diamond, whether liquidated, unliqui-

---

tion with respect to miners previously employed by such prior operator as if the acquisition had not occurred and the prior operator had continued to be an operator of a coal mine.

(2) Nothing in this subsection shall relieve any prior operator of any liability under this section.

30 U.S.C.A. § 932 (West 1986).

dated, known or unknown, shall be treated in a single class under Blue Diamond's plan of reorganization as set forth under the terms of this Agreement.

2. Upon confirmation of Blue Diamond's plan of reorganization, the DOL shall release from liability all parties including Blue Diamond, the reorganized Blue Diamond, First American, First American Trust Company or the officers, directors and agents of these entities, against which DOL may have asserted claims relating to Blue Diamond, and will waive its rights for any payments except for those as specifically set forth in this agreement.

3. Upon confirmation of Blue Diamond's plan of reorganization, the [Black Lung Disability Trust] Fund shall be the sole obligor to effect the payment of benefits to any and all employees of Blue Diamond terminated prior to June 19, 1991, pursuant to the Black Lung [Benefits] Act....

. . . .

10. DOL, through its undersigned counsel, represents and warrants that it has full authority and power and has taken all actions necessary to execute, deliver and perform this settlement agreement and consummate all transactions contemplated hereunder.

. . . .

16. The Parties hereby consent to and submit to the jurisdiction of the Bankruptcy Court with respect to the interpretation of any and all claims, causes of action, or disputes arising out of or related to this agreement.

The Settlement Agreement, as required by its terms, is incorporated into Blue Diamond's Plan, which provides at Article 3.8 that the DOL, the sole creditor comprising Class 8 under the Plan, "will receive payment pursuant to ... [the December 10, 1992] settlement agreement which is attached hereto...." The Settlement Agreement is appended to the Plan as Exhibit P.

## II

## THE DOL'S MOTION TO DISMISS

### A

### JURISDICTION—SUBJECT MATTER

The DOL contends that this court does not have subject matter jurisdiction over the issues raised by Cumberland in its Complaint.

Section 1334 of title 28 of the United States Code determines the extent of the district court's jurisdiction over bankruptcy matters. If the district court has jurisdiction under § 1334, then § 157 of title 28 operates to determine whether that jurisdiction may be placed with the bankruptcy court. Section 1334 provides in material part:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C.A. § 1334 (West 1993).

Section 1334 grants jurisdiction to the district court over four types of matters: (1) "cases under title 11"; (2) "proceedings arising under title 11"; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11.

The first category refers to the bankruptcy case itself, initiated by filing a petition under Bankruptcy Code §§ 301, 302 or 303. *Michigan Employment Security Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir.1991); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir.1987). The Sixth Circuit explained, in *Wolverine*, that the second, third and fourth categories operate conjunctively to define the scope of bankruptcy jurisdiction. 930 F.2d at 1141. Therefore, the district court has jurisdiction over the instant proceeding as long as it is at least "related to" a case under title 11.

In *Robinson v. Michigan Consol. Gas Co.,* 918 F.2d 579, 583–84 (1990), the Sixth Circuit adopted the test for relatedness as set forth by the Third Circuit in *Pacor v. Higgins (In re Pacor),* 743 F.2d 984 (3rd Cir.1984):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Id.* at 994 (emphasis in original; citations omitted).

To this test, the Sixth Circuit has added the caveat that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *Robinson,* 918 F.2d at 584 (*quoting In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986)).

■ The instant adversary proceeding is, at a minimum, related to Blue Diamond's bankruptcy case because the outcome may affect the amount of Cumberland's claim against Blue Diamond. Further, the outcome will affect the amount of the distribution to unsecured creditors under Blue Diamond's Plan. If Cumberland succeeds, its claim, presumably, will be zero. If the DOL succeeds, Cumberland's claim will be for the amount of Cumberland's liability under the Black Lung Benefits Act as determined in the various pending administrative proceedings. Under either scenario, the distribution available to general unsecured creditors under Blue Diamond's Plan will be affected. To the extent Cumberland is the holder of an allowed unsecured claim it will participate in Blue Diamond's Plan as a Class 9 creditor. As such, it will be entitled to share pro rata with other members of the class in a $4,500,-000 cash distribution to be paid by Blue Diamond over the life of the Plan and it will also be entitled to a pro rata distribution of 280,566 shares of common stock issued by Blue Diamond ninety days after confirmation of its Plan. If Cumberland does not participate as a Class 9 creditor, the dividend and common stock payable to other Class 9 creditors will be enhanced.[4]

■ The DOL maintains that Cumberland's claim would be disallowed regardless of the outcome of this adversary proceeding and that, for this reason, this proceeding is unrelated to Blue Diamond's bankruptcy case. Specifically, the DOL contends that Cumberland's claim was filed late and that it should be disallowed under Bankruptcy Code § 502(e)(1)(B) because it would be contingent at the time of allowance.[5] Initially, the court observes that whether Cumberland's claim would be disallowed on grounds advanced by the DOL is mere conjecture because those issues are not before the court. Further, it is the debtor who filed the objection to Cumberland's claim, not the DOL, and the issues Blue Diamond relies on in support of that objection have not yet been specified in a pretrial order. The DOL's statements regarding disallowance of Cumberland's claim

---

4. The court takes judicial notice of an Agreed Order entered in Blue Diamond's case on May 17, 1993. This order directed Blue Diamond to withhold from distributions to Class 9 creditors and to transfer to the attorney for the Committee of Unsecured Creditors as escrow agent, money and stock sufficient to satisfy Cumberland's claim under the Plan. Cumberland's claim is maximized under this order at $3,000,000 and the funds and stock are to be held pending resolution of Blue Diamond's objection to Cumberland's claim. If Cumberland has no claim, or has a claim of less than $3,000,000, the distribution pool to the other Class 9 creditors will be increased.

5. Section 502(e)(1)(B) provides in material part:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
>
> . . . .
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution[.]

11 U.S.C.A. § 502(e)(1)(B) (West 1993).

are immaterial to the motions presently before the court.

At this point, the court need not determine whether Cumberland's claim would be disallowed. Under the *Pacor* test, it is enough that the outcome of this adversary proceeding "could *conceivably* have *any* effect" on Blue Diamond or Blue Diamond's estate. Further, the potential effect on Blue Diamond's estate is clearly more than the "extremely tenuous connection" that the Sixth Circuit warned against in *Salem Mortgage Co.*

The DOL argues that adjudications of operator liability under the Black Lung Benefits Act are administrative proceedings and that only final orders of the Benefits Review Board are subject to judicial review. The DOL contends that, although § 1334(b) of title 28 may grant concurrent jurisdiction with other "courts," it does not give concurrent jurisdiction with administrative agencies such as itself. *See Thunder Basin Coal Co. v. Reich,* —— U.S. ——, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994); *Board of Governors v. MCorp Financial, Inc.,* —— U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991).

The DOL is correct that Congress gave it exclusive jurisdiction over adjudications of operator liability under the Black Lung Benefits Act. However, in the instant proceeding, the court is not called upon to determine liability under the Black Lung Benefits Act. Rather, it is called upon to determine whether Cumberland has been released from liability by the DOL under the terms of the Settlement Agreement incorporated into Blue Diamond's Plan. At no time has the DOL taken the position that it did not have the authority to enter into the December 10, 1992 Settlement Agreement nor has it argued that the release contained within the Settlement Agreement was ineffective.

Having determined that the district court possesses subject matter jurisdiction over the issues raised in the instant adversary proceeding pursuant to § 1334(b), it is necessary to determine the extent of that jurisdiction.[6]

Section 157 of title 28 provides in material part:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

> . . . .

> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C.A. § 157 (West 1993).

Under § 157, bankruptcy courts have not been granted the full extent of the judicial power that district courts possess under § 1334. *Wolverine,* 930 F.2d at 1143–44. Except for the bankruptcy case itself, bankruptcy courts may hear only two categories of proceedings:

---

**6.** As the DOL questions the jurisdiction of this court to hear and determine the claims Cumberland asserts against it, this court must determine, as a preliminary matter, the status of these claims as core, noncore related, or noncore unrelated. *28 U.S.C.A. § 157(b)(3) (West 1993).* The burden of establishing the bankruptcy court's jurisdiction over the issues in dispute is on Cumberland. *Levovitz v. Verrazano Holding Corp. (In re Verrazano Holding Corp.),* 86 B.R. 755, 762 (Bankr.E.D.N.Y.1988).

Subsection 157(b)(1) gives bankruptcy judges the power to determine "all core proceedings arising under title 11, or arising in a case under title 11" and to enter appropriate orders and judgments. Subsection 157(c)(2) [sic] gives the bankruptcy judge the limited power to hear "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11" and to submit proposed findings of fact and conclusions of law to the district court subject to de novo review.[7]

*In re Wood,* 825 F.2d at 95.

In its analysis of the meaning of "core proceedings," the Fifth Circuit has stated:

The meaning of core proceedings is illuminated . . . by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over "core proceedings *arising under title 11, or arising in a case under title 11.*" The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings "arising under" title 11, "arising in" title 11 cases, and "related to" title 11 cases. Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings.

*Id.* at 96 (emphasis in original).

The Fifth Circuit went on to state that the phrase "arising under title 11" describes "those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Id.* As to the second category of core proceedings, those "arising in" a case under title 11, the court stated:

The meaning of "arising in" proceedings is less clear, but seems to be a reference to

those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

*Id.* at 97 (emphasis in original; footnote omitted).

■ A proceeding which neither "arises in" nor "arises under" a case under title 11 is noncore. As such the bankruptcy judge may nonetheless hear the proceeding if it "is otherwise related to a case under title 11." 28 U.S.C.A. § 157(c)(1) (West 1993). *See Wood,* 825 F.2d at 97.

Although "related" is not defined in § 157(c)(1), a leading treatise on bankruptcy states:

In light of the *Marathon* case,[8] the legislative history surrounding the 1984 jurisdictional provisions and the post–1984 case law, it seems clear that cases encompassed by section 1334(b) "related proceedings" are those which (1) involve causes of action owned by the debtor that became property of the estate under section 541, and (2) concern *suits between third parties which in one way or another affect the administration of the title 11 case.*

1 *Collier On Bankruptcy,* ¶ 3.01[1][c][iv] (15th ed. 1993) (footnotes omitted; emphasis added).

Bankruptcy Judge Guy Cole, distinguishing between core and noncore proceedings, stated:

Section 157 embodies the principles set forth in *Marathon.* The core/noncore dichotomy. established by § 157 is based upon the distinction articulated by the *Marathon* plurality between the "restructuring of debtor-creditor relations which is at the core of the federal bankruptcy power" and the "adjudication of state-created

---

7. The court's reference to § 157(c)(2) appears to be a misprint. It is § 157(c)(1) which requires the bankruptcy court to submit proposed findings of fact and conclusions of law to the district court in noncore related proceedings. Section 157(c)(2), in fact, permits an exception to the mandate of § 157(c)(1) by providing that the bankruptcy court, "with the consent of all the

parties," may dispose of noncore related proceedings by the entry of final orders and judgments. 28 U.S.C.A. § 157(c)(2) (West 1993).

8. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

private rights." Thus BAFJA [9] distinguishes between proceedings "arising under" and "arising in," designated as core, which may be heard and determined by bankruptcy judges, who do not have Article III status, and "related" proceedings (like the breach of contract action in *Marathon*) involving common law actions which are merely peripherally related to the adjudication of bankruptcy under federal law. *United Security & Communications, Inc. v. Rite Aid Corp. (In re United Security & Communications, Inc.)*, 93 B.R. 945, 954 (Bankr.S.D.Ohio 1988) (citations and footnote omitted).

■ If a proceeding is neither core nor noncore related, it is noncore and unrelated. Bankruptcy courts lack jurisdiction to determine "collateral disputes" between third parties which do not implicate the debtor or its property, *i.e.*, proceedings which are noncore and unrelated. *Wisconsin v. Marine Bank (In re Kubly)*, 818 F.2d 643, 645 (7th Cir. 1987) (" '[R]elated to' jurisdiction encompasses only disputes that affect the payments to the bankrupt's other creditors or the administration of the bankrupt's estate."); *Valentine v. Bank of Commerce (In re Southern Industrial Banking Corporation)*, 63 B.R. 331, 335 (Bankr.E.D.Tenn.1986).

■ This court has subject matter jurisdiction over the issues raised by Cumberland in this adversary proceeding. Moreover, pursuant to 28 U.S.C.A. § 157(b)(2)(A) and (O) (West 1993), this is a core proceeding based on the fact that the matter involves construction and implementation of Blue Diamond's confirmed Chapter 11 Plan.[10] As such, it arises under title 11. This court has the authority to construe the terms of a plan that it confirmed and to ensure that the plan is properly executed and consummated. *Pioneer Inv. Serv. Co. v. The Cain Partnership,*

*Ltd. (In re Pioneer Inv. Serv. Co.)*, 141 B.R. 635, 640–42 (Bankr.E.D.Tenn.1992).

■ Even were the court to determine that this is a noncore related proceeding, the DOL has consented to the entry of a final order or judgment by the bankruptcy judge as required by 28 U.S.C.A. § 157(c)(2) (West 1993). Paragraph 16 of the December 10, 1992 Settlement Agreement clearly and unambiguously provides that the DOL "consent[s] to and submit[s] to the jurisdiction of the Bankruptcy Court with respect to the interpretation of any and all claims, causes of action, or disputes arising out of or related to this agreement." The DOL's consent could not be manifested more clearly. This court finds that this provision of the Settlement Agreement constitutes compliance with Fed. R.Bankr.P. 7012(b) which provides that "[i]n non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties." The Settlement Agreement, which is incorporated into the debtor's Plan, meets the statutory and procedural requirements of the Bankruptcy Code and Rules necessary to permit the bankruptcy court to resolve this adversary proceeding by the entry of a final judgment.

■ Further, although the DOL did not raise the issue, the court notes that the fact that Blue Diamond's Plan has been confirmed will not serve to defeat jurisdiction. *In re Pioneer Inv. Serv. Co.*, 141 B.R. 635, 641 ("[T]he bankruptcy court's retention of post confirmation jurisdiction, while limited, exists to ensure compliance with the provisions of title 11 and to ensure the proper execution and consummation of the debtor's plan.") *In accord, Matter of Leeds Bldg. Products, Inc.*, 160 B.R. 689, 691 (Bankr. N.D.Ga.1993). The Settlement Agreement is an integral part of Blue Diamond's Plan.

---

9. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353.

10. Section 157(b)(2) of title 28 provides in material part:
Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;

. . . .
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
28 U.S.C.A. § 157(b) (West 1993).

## B

### JURISDICTION—SOVEREIGN IMMUNITY

The DOL also contends that Cumberland may not maintain this adversary proceeding because it has not waived its sovereign immunity.

Section 106 of the Bankruptcy Code controls this issue:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C.A. § 106 (West 1993).

■ The Supreme Court has construed § 106(a) to waive sovereign immunity with regard to monetary relief for compulsory counterclaims to government claims. *U.S. v. Nordic Village, Inc.*, —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). Similarly, it has construed § 106(b) to waive sovereign immunity with regard to permissive counterclaims seeking monetary relief although limited in amount to a setoff of the government's claim. *Id.* Because the DOL has not filed a claim in the bankruptcy case, Cumberland cannot argue that § 106(a) or (b) waives the DOL's sovereign immunity.

However, the Supreme Court has construed § 106(c) to waive sovereign immunity as to injunctive and declaratory relief. *Id.* at —— and ——, 112 S.Ct. at 1015 and 1017. *See also Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 102, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989). The DOL contends that Cumberland may not invoke § 106(c) because this case involves a claim for monetary relief. The DOL reasons that, because it would be obligated to pay black lung claims itself if Cumberland obtains the requested relief, it implicates the Federal Treasury and, therefore, Cumberland is seeking monetary relief.

■ Contrary to the DOL's argument, this case cannot be characterized as one for monetary relief. If Cumberland is successful, the judgment will not award monetary damages. Rather, it will declare that Cumberland is released from liability pursuant to the terms of the December 10, 1992 Settlement Agreement. This is an action seeking declaratory relief.

Section 106(c) waives sovereign immunity only as to sections of the bankruptcy code containing the so-called "trigger words." In the instant case, Bankruptcy Code § 1141(a) provides:

Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, *and any creditor*, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C.A. § 1141(a) (West 1993) (emphasis added).

■ Bankruptcy Code § 101(10) defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C.A. § 101(10)(A) (West 1993). Bankruptcy Code § 101(5)(A) defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C.A. § 101(5) (West 1993). The court

takes judicial notice that the debtor's schedules show numerous lawsuits for pneumoconiosis claims asserted by the DOL pending as of the petition date. Further, the DOL, in the December 10, 1992 Settlement Agreement, acknowledges that it held prepetition claims against Blue Diamond. The Settlement Agreement is a resolution of those claims.

The DOL is a "creditor" and, by virtue of § 1141(a), it is bound by the provisions of the confirmed Plan. Because § 1141(a) contains the trigger word "creditor," § 106(c) operates to waive sovereign immunity as to the declaratory relief sought by Cumberland in this adversary proceeding. Accordingly, Cumberland may maintain this action against the DOL.

The DOL's Motion To Dismiss will be denied.

## III

### THE DOL'S MOTION TO STAY

The DOL argues that, even if the court determines that it does have jurisdiction, it should exercise its discretion to stay this adversary proceeding until it resolves Blue Diamond's objection to Cumberland's claim. This argument is not persuasive. If Blue Diamond's objection to Cumberland's claim is sustained, this adversary proceeding will be rendered superfluous. If Cumberland succeeds in this adversary proceeding, it will have no claim for indemnification against the debtor and the court will not need to consider the debtor's objection. In order to resolve the objection to Cumberland's claim, Cumberland and the debtor will be required to go through the discovery process, both spending a considerable amount of time and money. Further, Blue Diamond's principle objection to Cumberland's claim is grounded upon the release contained in the December 10, 1992 Settlement Agreement. The DOL is an essential party to the resolution of that issue. Because the motions presently before the court place this adversary proceeding in a posture that allows it to be resolved expeditiously, because the release issue is key to Blue Diamond's objection to Cumberland's claim, and because the DOL is a necessary party to a resolution of the release issue, the court declines to grant the motion to stay. The DOL's motion to stay will accordingly be denied.

## IV

### CUMBERLAND'S MOTION FOR SUMMARY JUDGMENT

Cumberland's Motion for Summary Judgment is grounded on the substantive language of the Settlement Agreement. Pursuant to Fed.R.Civ.P. 56(c), incorporated into Fed.R.Bankr.Proc. 7056, summary judgment is appropriate only when, after consideration of the evidence presented by the pleadings, affidavits, answers to interrogatories, and depositions in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Cumberland relies on the language of paragraphs 2 and 3 of the December 10, 1992 Settlement Agreement, which state in material part:

2. Upon confirmation of Blue Diamond's plan of reorganization, *the DOL shall release from liability all parties* including Blue Diamond, the reorganized Blue Diamond, First American, First American Trust Company or the officers, directors and agents of these entities, against which DOL may have asserted claims relating to Blue Diamond, and *will waive its rights for any payments except for those as specifically set forth in this agreement.*

3. Upon confirmation of Blue Diamond's plan of reorganization, the *[Black Lung Disability Trust Fund shall be the sole obligor to effect the payment of benefits to any and all employees of Blue Diamond terminated prior to June 19, 1991, pursuant to the Black Lung Act....*

(emphasis added).

Cumberland contends that, by this language, the DOL released it from any liability it may have had under the Black Lung Act in regard to the Scotia Mines. As authority for its position, Cumberland relies on the Sixth Circuit case of *Taggart v. U.S.*, 880 F.2d 867 (1989). The plaintiff in that case was injured

in a slip and fall accident outside a United States Post Office. It was unclear whether the accident occurred on land owned by the post office or an adjacent church. The plaintiff and the church entered into a release agreement which stated that the plaintiff "does hereby remise, release and forever discharge [the church] ... and also any and all other persons, associations and corporations, whether herein named or referred to...." The Sixth Circuit, construing Michigan law, held that by its language, the instrument "purports to confer third-party beneficiary rights upon a class of parties which includes the [United States]" and that the United States was thus entitled to interpose the release as a defense to the action against it. *Id.* at 870. The court accordingly affirmed the district court's grant of the United States' Motion For Summary Judgment.

 Under Tennessee law, because a release is a contract, rules of construction for interpreting contracts apply to releases. *Jackson v. Miller,* 776 S.W.2d 115, 117 (Tenn.App.1989). It is well settled that, "[i]f a contract is plain and unambiguous the meaning thereof is a question of law and it is the Court's function to interpret the contract as written according to its plain terms." *Id.* See also *Petty v. Sloan,* 277 S.W.2d 355, 358 (Tenn.1955).

Initially, the DOL argues that paragraphs 2 and 3 of the Settlement Agreement, by their terms, do not release Cumberland of any liability. Specifically, the DOL contends that the word "including" in paragraph 2 limits the parties released to only those listed. It contends that elsewhere in the instrument, when the parties used the word "including" to express nonexclusivity, they also included the words "without limitation." Therefore, reasons the DOL, because the words "without limitation" are not used in paragraph 2, the word "including" encompasses only the parties listed and no others.

 This court cannot ignore the plain meaning of the word "including." Whether accompanied or not by the words "without limitation," the word "including" denotes nonexclusivity. The words "without limitation" as used elsewhere in the Settlement Agreement are redundant. Merely be-

cause Cumberland was not specifically listed by name in paragraph 2 does not exclude it from the expression "all parties." Further, the nonexclusive intent of the release given by the DOL under paragraph 2 is emphasized by the concluding phrase in the paragraph that the DOL is waiving its claim under the Black Lung Benefits Act and Black Lung Disability Trust Fund "except" for those payments "specifically set forth in ... [the Settlement] [A]greement." Finally, paragraph 3 of the Settlement Agreement provides that the "[Black Lung Disability Trust] Fund shall be the sole obligor to effect the payment of benefits ... pursuant to the Black Lung [Benefits] Act." The intention of the DOL to release "all parties," including Cumberland from whom it might recover, could not be more clearly expressed.

The DOL's main argument is that Cumberland is attempting to take paragraphs 2 and 3 out of context. Specifically, it argues that the only reasonable interpretation of the Settlement Agreement as a whole must take into account paragraphs 12, 14 and 15 which provide:

12. On confirmation of the plan of reorganization, DOL shall release, relieve, waive and forever discharge any and all claims that it has against Blue Diamond, the reorganized Blue Diamond, or the officers, directors, or agents of those entities, unless Blue Diamond or the reorganized Blue Diamond fail to make payments set forth under this agreement.

. . . .

14. On confirmation, DOL shall release, waive and forever discharge any and all claims that DOL has and may assert against First American and First American Trust Company, its directors, officers and agents, relating to or in connection with Blue Diamond, and Blue Diamond shall use its best efforts to obtain a like release from said entities in favor of the DOL.

15. Upon confirmation of Blue Diamond's plan of reorganization, and for so long as Blue Diamond complies with the terms of their agreement, DOL shall not

identify Blue Diamond as a responsible operator on any Black Lung Claim filed with the DOL, and DOL shall indemnify and hold Blue Diamond harmless from any claim or liability resulting from any Black Lung Claim asserted against Blue Diamond.

The DOL contends that, if either paragraphs 2 or 3 are construed as a general release, then paragraphs 12, 14 and 15 will be rendered superfluous.

 It is true that "[t]he intention of the parties is to be gathered from the entire instrument and in such inquiry that construction will be adopted which gives effect to each and every part of the instrument where that is possible." *Evans v. Tillett Bros. Const. Co.*, 545 S.W.2d 8, 11 (Tenn.App.1976). However, paragraphs 2 and 3 of the Settlement Agreement are susceptible to only one interpretation. Paragraph 2 can only be construed to be a general release. As already discussed, it can only be construed to include Cumberland. Paragraph 3 reinforces the intention of the parties that Cumberland be included within the broad scope of the release by providing that after confirmation of Blue Diamond's Plan the Black Lung Disability Trust Fund will be the sole obligor to effect the payment of benefits to former employees of Blue Diamond under the Black Lung Benefits Act. Paragraph 3 is capable of but one construction: no entity other than the Black Lung Disability Trust Fund will be liable for black lung benefits after confirmation of Blue Diamond's Plan. Paragraphs 12, 14 and 15 may be rendered redundant, but to construe paragraphs 2 and 3 otherwise would be to ignore their plain and unambiguous language.

Construing the unambiguous language of the Settlement Agreement, the intention of the DOL could only have been to release all parties, including Cumberland, from whom the DOL might have a claim resulting from black lung liability relating to the Scotia Mines. The court, accordingly, finds that the Settlement Agreement discharges Cumberland from all liability under the Black Lung Benefits Act and the Black Lung Disability Trust Fund.

## V

### CONCLUSION

As resolution of the above issues is dispositive of the DOL's Motion To Dismiss and Cumberland's Motion For Summary Judgment, the court need not address other issues raised by the DOL in support of its Motion To Dismiss.

Because this court possesses subject matter jurisdiction over the issues raised in this adversary proceeding and because the DOL is deemed to have waived its sovereign immunity pursuant to Bankruptcy Code § 106(c), the DOL's Motion To Dismiss will be denied. Further, because the December 10, 1992 Settlement Agreement can only be construed to release Cumberland from any liability under the Black Lung Benefits Act and Black Lung Disability Trust Fund, there is no genuine issue of material fact and Cumberland is entitled to a judgment as a matter of law. Accordingly, Cumberland's Motion For Summary Judgment will be granted. There is, however, no basis upon which to award Cumberland attorneys' fees. *See Tiedel v. Northwestern Michigan College*, 865 F.2d 88 (6th Cir.1988) (Attorneys fees may only be awarded when authorized by statute or contract). Each party will bear its own costs.

An appropriate judgment will be entered.

### *JUDGMENT*

In accordance with the Memorandum On Plaintiff's Motion For Summary Judgment And On Defendant United States Of America's Motions To Dismiss And To Stay Adversary Proceeding filed this date, it is ORDERED, ADJUDGED, and DECREED as follows:

1. The "Defendant United States Of America's Motion To Dismiss" filed July 20, 1993, by the defendant, United States of America, on behalf of its agency, the Department of Labor, seeking an order dismissing the plaintiff's Complaint, is DENIED.

2. The "Defendant United States Of America's Motion To Stay This Adversary Proceeding" filed December 14, 1993, by the defendant, United States of America, on behalf of its agency, the Department of Labor,

seeking a stay of the plaintiff's prosecution of this adversary proceeding, is DENIED.

3. The "Motion For Summary Judgment" filed September 27, 1993, by the plaintiff, Cumberland River Coal Company, seeking summary judgment pursuant to Fed.R.Civ.P. 56, incorporated into Fed.R.Bankr.P. 7056, is GRANTED.

4. The plaintiff, Cumberland River Coal Company, pursuant to the provisions of the Settlement Agreement executed by the defendants, United States of America, on behalf of its agency, the Department of Labor, and Blue Diamond Coal Company, the reorganized debtor, on December 10, 1992, as incorporated into Blue Diamond Coal Company's confirmed plan of reorganization, is released and discharged from all liability to the defendant, United States of America, and its agency, the Department of Labor, arising under the Black Lung Benefits Act (30 U.S.C.A. §§ 901 through 945 (West 1986 and Supp. 1993)) and the Black Lung Disability Trust Fund (26 U.S.C.A. § 9501 (West Supp.1989)), which might have heretofore arisen or might hereafter arise out of the plaintiff's purchase from Blue Diamond Coal Company on or about August 13, 1990, of those coal mining operations located in Wise County, Virginia, and Letcher County, Kentucky, known as the Scotia Mines.